O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No. SACV 08-01015 DOC (MLGx)            Date: December 1, 2008

Title: SUSAN JESKE V. RAVEN FENMORE

DOCKET ENTRY
    [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                                 Date:_____ Deputy Clerk: _____

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

   Kristee Hopkins                              Not Present
   Courtroom Clerk                            Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

      Before the Court is Defendant Raven Fenmore's Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion"). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After considering the moving and opposing papers[1] thereon, and for the reasons set forth below, the Court hereby DENIES Defendant's Motion.

## I. BACKGROUND

      Plaintiff Susan Jeske ("Jeske"), a resident of Costa Mesa, California, owns the mark MS. AMERICA, U.S. trademark registration no. 2,321,477. Jeske registered the mark on February 22, 2000, "for the service of 'promoting the sale of goods and services of others by conducting national and

---

[1] Defendant did not file a Reply.

regional beauty pageants for women over 26 years of age.'" Plaintiff Jeske's information and services related to her pageant operations are available through the website www.msamericapageant.com. That website indicates that Jeske's pageant operations are based out of Costa Mesa, California.

On November 10, 2005, Defendant Raven Fenmore ("Fenmore") filed an intent-to-use application with the United States Patent and Trademark Office for the mark MS. AMERICA. In that application, Fenmore indicated that she wanted to use the mark "in connection with 'entertainment services in the nature of beauty and talent pageants.'" The United States Patent and Trademark Office, on March 22, 2006, refused to register the mark to Defendant due to Plaintiff's trademark registration.

On November 11, 2006, Defendant Fenmore sought to cancel Plaintiff's trademark registration by initiating a proceeding with the Trademark Trial and Appeal Board. That proceeding is still pending.

Similar to Plaintiff Jeske, Defendant Fenmore operates and organizes a number of national beauty pageants. In December 2006, Fenmore started operating the website www.ms-america.org (the "Website"). According to Plaintiff's Complaint, "[d]efendant's infringing uses include the designation of MS. AMERICA and MS. Cont'l AMERICA as a mark for her entertainment services in the nature of beauty and talent pageants in interstate commerce in competition with the services provided by Plaintiff related to beauty pageants."

Specifically, Plaintiff claims that Defendant's Website, as of October 2007, included a claim that Defendant Fenmore owned the MS. AMERICA mark despite Fenmore's knowledge of Jeske's trademark registration.[2] Further, Defendant claims ownership of a series of "Ms." marks related to California beauty pageant titles, including "Ms. California," "Ms. Golden State, and "Ms. California Coast."[3] Defendant Fenmore also runs a Miss Continental America Pageant and claims ownership of the following California titles: "Miss California," Miss Golden State," and "Miss California Coast."

In addition, Fenmore acts as President and CEO of the Continental Miss Teen America Scholarship Program, Inc. This company runs the Miss Teen America, Miss Junior Teen America, and Miss Teeny America pageants. Information regarding these competitions is also found on the Website. Here, too, Fenmore claims ownership in a number of marks related to California titles: "Miss California

---

[2]Currently, Defendant's Website no longer claims ownership of the MS. AMERICA mark but still claims ownership of MS. Cont'l AMERICA, a mark that is also subject to Plaintiff's infringement claim due to its allegedly deceptive similarity to the MS. AMERICA mark. Further, Defendant's mailing address, as listed on the Website, still refers to her company as the "Ms. America Pageant."

[3]The Court notes that Defendant claims state-oriented trademarks in all the fifty states as well as the District of Columbia.

Teen America," "Miss Golden State Teen America," "Miss Pacific Coast Teen America," "Miss California Jr. Teen America," "Miss Golden State Jr. Teen America," "Miss Pacific Coast Jr. Teen America," "Miss California Teeny American," "Miss Golden Coast Teeny America," and "Miss Pacific Coast Teeny America."

The Website provides information on all of these related beauty pageants. Specifically, the Website includes information on how to enter the different pageants. The site includes a link to printable entry forms and indicates that downloadable entry forms will soon be available to prospective contestants. The Website also allows prospective contestants to pay all relevant fees on-line through PayPal. These fees include a required sponsorship fee of $750 and an advertising fee of $400, as all contestants are required to sell a full page of ads for the pageants' program books. The Website indicates that contestants may have to pay the company for additional "'party'" tickets but does not clearly explain what these tickets are. Prospective competitors are also directed to email photos of themselves for inclusion on the Website.

All of Fenmore's pageants are open to residents of all fifty states. The registration form, available on-line, requires participants to indicate their state of residence, as does the on-line payment option. All pageants allegedly profit from collecting the required fees from participating contestants. Plaintiff Jeske admits that she currently does not know if Defendant Fenmore successfully solicited California residents for participation in the 2006 or 2007 MS. Cont'l AMERICA pageants.[4] However, California residents have competed in the Miss Teen America Pageants from 1999-2007. In addition, California residents have participated in the Miss Junior Teen America competitions from 2003-2006. Thus, Defendant Fenmore has presumably received fees from California residents in connection with her beauty pageant operations.

Plaintiff ultimately filed a complaint against Defendant for trademark infringement, among other claims, on September 11, 2008. Defendant has yet to answer the complaint. Defendant, proceeding pro se, instead brought the present motion to dismiss for lack of personal jurisdiction. Defendant Fenmore indicates that she is a resident of Middletown, Connecticut. She alleges that she does not physically conduct business in the state of California and has not visited the state since 1986. She further claims to own no property in the state. Finally, she points out that all pageants that she operates are performed in the state of Connecticut.

## II.   LEGAL STANDARD

---

[4]The Court notes that the Website archive that links to the 2006 and 2007 winners of MS. Cont'l AMERICA does not also include a list of the participants in those pageants. Further, the Court could not find a list of pageant participants for the MS. Cont'l AMERICA pageants, whereas the archives for the teen pageants do include such information.

A plaintiff has the burden of establishing that personal jurisdiction exists over a defendant. *E.g., Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003) (citing *John Doe I v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)). As this Court has stated, "[w]hen a defendant's motion to dismiss is made as its initial response, the plaintiff only needs to make a prima facie showing that personal jurisdiction exists. *Oakley, Inc. v. Jofa AB*, 287 F. Supp. 2d 1111, 1114 (C.D. Cal. 2003).

Further, the Court may rule on a defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) without first holding an evidentiary hearing. In such a situation, a plaintiff has the burden of making a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Id.* at 1129. When the plaintiff's version of the facts is not directly controverted, it is taken as true for the purposes of a Rule 12(b)(2) motion. *Id.* (quoting *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)). Conflicts between the facts in the parties' affidavits are resolved in the plaintiff's favor. *Id.*

Where there is no federal statute controlling the Court's exercise of personal jurisdiction, federal courts must look to the forum state's jurisdictional statute to determine whether it is proper to assert personal jurisdiction. *E.g., id.* The California long-arm statute provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. Thus, the Court's jurisdictional analysis under California law and federal due process is the same. *Yahoo! Inc. v. La Ligue Control Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

The Due Process Clause requires that a court exercise personal jurisdiction over a defendant only if the defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945) (internal quotation marks omitted). A court may exercise general jurisdiction over a defendant whose contacts with the forum are so "continuous and systematic" that personal jurisdiction is proper in any action. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78, 105 S. Ct. 2174 (1985). Absent general jurisdiction, a court may also exercise specific jurisdiction over a defendant where "jurisdiction [is] based on the relationship between the defendant's forum contacts and the plaintiff's claim." *Yahoo!*, 433 F.3d at 1205.

In the Ninth Circuit, a three-part test determines whether specific jurisdiction exists: (1) the non-resident defendant must purposefully direct its activities at, or consummate some transaction with, the forum state or a resident thereof; or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum; (2) the plaintiff's claim must be one that arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *E.g., id.* at 1205-06.

## III.     DISCUSSION

Plaintiff Jeske only argues that this Court has jurisdiction over Defendant Fenmore based on specific personal jurisdiction. In particular, Jeske argues that Defendant Fenmore's operation of the Website that solicits residents from California, among other states, to participate in beauty pageants that use the allegedly infringing marks provides a sufficient basis for the Court to assert jurisdiction over Fenmore. Therefore, the Court proceeds accordingly.

### A.  Purposeful Availment

The "purposeful availment" requirement involves a determination as to whether "defendant's conduct and connection with the forum State are such that it should reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559 (1980). The defendant may not be haled into the jurisdiction through fortuitous contacts or by the unilateral activity of another party. *Id.* Yet, the purposeful availment requirement is met where the "defendant has taken deliberate action within the forum state or if [s]he has created continuing obligations to forum residents." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The defendant need not be physically present within the forum state or have physical contacts with the forum provided that the defendant otherwise directs activity toward forum residents. *Id*.

In the internet context, the Ninth Circuit utilizes a sliding scale analysis under which "passive" websites do not create sufficient contacts to establish purposeful availment, whereas interactive websites may create sufficient contacts, depending on how interactive the website is. *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008)(citing *Cybersell, Inc. v. Cybersell, Inc*., 130 F.3d 414, 419 (9th Cir.1997) (emphasis supplied). "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997).

A passive website is one that "does little more than make information available to those who are interested in it." *Id*. In contrast, a highly interactive website is one that allows the defendant to "enter[] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet. *Id*. And between these two extremes are interactive websites that allow a user to exchange information with a host computer. *Id.* In this latter context, "the exercise of jurisdiction is determined by examining the level of interactivity and [the] commercial nature of the exchange of information that occurs on the Web site." *Id*.

To begin, the Court agrees that Defendant's Website is both interactive and commercially-oriented. Through the use of the Website, the Defendant seeks to solicit participants for its pageants, advertise its pageants, and promote the services related to the operation of the pageants. For example, the homepage states in bold: "ARE YOU THE NEXT MS. CONT'L AMERICA? The Ms. Con't [sic] America Pageant is seeking dynamic women to represent your state at the next National Pageant." The Defendant, in other words, clearly uses the site to conduct business operations. Most

significant, participants can pay necessary fees (that presumably translate into profits for the Defendant) on-line through the Website.

This ability to pay fees on-line also demonstrates the interactive nature of the site. The site provides participants with a link to a printable entry from and indicates that a downloadable form will soon be available. And participants are directed to send Defendant photos of themselves on-line to be uploaded to the Website. The fact that fees are paid on-line, that the Website provides participants with information regarding how to enter pageants, and that the site otherwise provides viewers with information related to past and future pageants demonstrates the commercially-oriented and interactive nature of the site. Thus, the Court must now examine whether Defendant has directed these commercial activities towards California.

The Court agrees with Plaintiff that national beauty pageants necessarily require participants that come from a variety of states. Indeed, national pageants are organized based on the participation of state representatives, typically with women who have achieved a state title going on to compete for a national title. And the Website homepage indicates, as quoted above, that Defendant's company is seeking participants to represent their respective *states* in the national competition.

Further, the Website, through its entry form and on-line payment option, demonstrates that California is one of the solicited states. The site includes a number of state titles trademarked by Fenmore in connection with the national MS. Cont'l AMERICA pageant. These MS. state titles include "Ms. California," "Ms. Golden State," and "Ms. California Coast." Ostensibly, only California residents can seek to hold these titles. Thus, Fenmore's advertising of these California titles connected to the MS. pageants demonstrates that Fenmore directs business to California, especially considering California residents will have to pay substantial fees to participate in the pageant that likely translate into profits for Defendant.

The fact that Plaintiff is currently unsure if California residents participated in the 2006 and 2007 MS. Cont'l AMERICA pageants does not change the fact that Fenmore directs business towards California residents. Indeed, the above facts, particularly the California-oriented "Ms." titles indicate that she solicits business from California residents. Further, Fenmore's so-called "sister" pageants (i.e. Miss Teen America and Miss Junior Teen America) consistently involve the participation of California residents and also have associated California state titles, as indicated on the Website. Thus, Fenmore has clearly reached out to and received monies (through the on-line payment of fees) from California residents in connection with the operation of her pageantry business.

As a result, Fenmore's point that she is a resident of Connecticut, that she owns no property in California, and that she has not been physically present in California since 1986, and therefore she should not be subject to jurisdiction in California is unavailing. Purposeful availment does not require physical presence in the forum when the defendant has directed commercial activities to the forum state, as Fenmore has done here.

### B.     Claim Arises Out Of Forum-Related Activities

The second minimum contacts requirement demands that the claim arise out of or relate to the defendant's forum-related activities. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). The Court employs a "but for" test to make this determination. *Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1131-32. Thus, "the Court considers whether plaintiff['s] claims would have arisen but for [defendant's] contacts with California." *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001).

Plaintiff's Jeske's claim for trademark infringement arises from Fenmore's use of the MS. AMERICA mark and the allegedly "confusingly similar" MS. Cont'l AMERICA mark. Defendant uses those marks on her Website to solicit participants in her national MS. Cont'l AMERICA pageant. And that solicitation is directed at California, among other states, as the pageantry business requires the participation of state representatives to compete for the ultimate national title.

In other words, but for the Defendant's solicitation of California residents, among other state residents outside of Connecticut, to participate in the MS. Cont'l AMERICA pageant, the Defendant would not actually have a national beauty pageant. And but for the Defendant's use of the allegedly infringing mark in her national pageant, Plaintiff would not be experiencing harm in California. Therefore, Jeske's claim for trademark infringement arises out of and relates to Fenmore's forum-related activities.

### C.     Reasonableness

Finally, "[o]nce it has been decided that a defendant purposefully established minimum contacts with a forum, '[s]he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction." *Id.* (quoting *Burger King*, 471 U.S. at 477). This third requirement of reasonableness depends on a balancing of seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Dole Food*, 303 F.3d at 1111.

Under this prong, "it is not enough that the [defendant] demonstrate that some other forum is more reasonable than California, [she] must show a due process violation; [she] must show that jurisdiction in California would make the litigation 'so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to [her] opponent.'" *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) (*quoting Burger King Corp.* 471 U.S. at 478.). As this Court has previously pointed out, dismissal under this prong is only appropriate in "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute are so attenuated that they are clearly

outweighed by the burden of subjecting the defendant to litigation within the forum." *Oakley, Inc*., 287 F. Supp. 2d at 1117.

Defendant has not demonstrated that the assertion of jurisdiction in this case would be unreasonable. The Court has already found that Defendant has reached out to the forum state. Conceding that the extent of the interjection is not entirely clear at this stage, this factor does not clearly weigh against the assertion of jurisdiction. While Defendant may be burdened by defending her suit in California, Defendant has made no showing that such burden puts her at a severe disadvantage in comparison to the Plaintiff. For example, Plaintiff would likely experience a similar inconvenience as Defendant if required to bring her suit in Connecticut, especially because both parties are individuals rather than large corporate entities. The Court can see no reason why, in this setting, the Plaintiff should be subject to the inconvenience of bringing suit in Connecticut instead of requiring the Defendant, who is allegedly infringing the Plaintiff's registered trademark, to appear in this forum.

California also has a strong interest in resolving trademark infringement disputes where the allegedly infringing activity is directed, in part, at the state and potentially has caused injury to residents of the forum (i.e. the Plaintiff). Further, no arguments have been advanced demonstrating the presence of a more appropriate forum. Thus, on balance, the inconvenience to the Defendant of defending a suit in California does not clearly rise to the level of a due process violation making assertion of jurisdiction in this case improper.

## IV. DISPOSITION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

The Clerk shall serve this minute order on all parties to the action.